UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 04-61424-CIV-JORDAN

| | |
|---|---|
| LAW OFFICES OF DZIKOWSKI<br>& WALSH, P.A., | ) <br> ) <br> ) <br> ) |
| Appellant | ) <br> ) |
| vs. | ) <br> ) |
| JOHN BARBEE, TRUSTEE FOR<br>DEBTOR WESTWOOD COMMUNITY<br>TWO ASSOCIATION, INC., | ) <br> ) <br> ) <br> ) |
| Appellee | ) <br> ) <br> ) |

## NOTICE OF FILING OF TRANSCRIPT

Appellee, John P. Barbee, Trustee for the chapter 7 estate of Westwood Community Two Association, Inc., by and through undersigned counsel, hereby files the attached transcript of the March 29, 2004 hearing before the Honorable Paul G. Hyman on the *Motion by Interested Party Dzikowski & Walsh to Reconsider re: Disgorgement Order; Motion by Trustee John P. Barbee to Make Interim Distribution to Homeowners Pursuant to Order Granting Trustee's Motion to Approve Compromise and Settlement with Unofficial Ad Hoc Committee and to Distribute Funds in Accordance Therewith.*

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

200 South Biscayne Boulevard   Suite 1000   Miami, Florida 33131-5308   Telephone 305·755·9500   Facsimile 305·714·4340

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via regular U.S. Mail, postage pre-paid upon John W. Walsh, Esq., Dzikowski & Walsh, 601 Sawgrass Corporate Parkway, Suite 120, Fort Lauderdale, Florida 33323 on this on this 19th day of May, 2005.

Dated: May 19, 2005

BERGER SINGERMAN, P.A.
Attorney for Trustee
200 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Phone: (305) 755-9500
Fax: (305) 714-4340

By: _Paul Avron_

Paul A. Avron
Florida Bar No. 0050814
pavron@bergersingerman.com
Ilyse M. Homer
ihomer@bergersingerman.com
Florida Bar No. 826316

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN  DISTRICT  OF FLORIDA
Judge Paul G. Hyman

04 JUN 25 PM 4:25

CLERK
U.S. BANKRUPTCY COURT
SO BR FLA
MIA - OFFICE

In the Matter of:                    Case No.: 990-BRKR2PGH

WESTWOOD COMMUNITY TWO
ASSOCIATION, INC.,

              Debtor.                            ORIGINAL
_____ X

MOTION BY INTERESTED PARTY DZIKOWSKI & WALSH TO RECONSIDER
RE:  DISGORGEMENT ORDER; MOTION BY TRUSTEE JOHN P. BARBEE
TO MAKE INTERIM DISTRIBUTION TO HOMEOWNERS PURSUANT TO
ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND
SETTLEMENT WITH UNOFFICIAL AD HOC COMMITTEE AND TO
DISTRIBUTE FUNDS IN ACCORDANCE THEREWITH

March 29, 2004

        The  above-entitled cause came on for hearing

before   the   HONORABLE  PAUL  G.  HYMAN,   one   of   the

Judges of the  UNITED  STATES  BANKRUPTCY COURT,  in  and

for the SOUTHERN DISTRICT OF FLORIDA, at 299 East Broward

Boulevard, Fort Lauderdale,  Broward County, Florida,  on

Monday, March 29, 2004, commencing at or about  9:30 a.m.,

and the following proceedings were had:

                              REPORTED BY:  Margaret Franzen

ENT BY: JUDICIAL RESEARCH & RETRIEVA   V;954 832 0993   ;   JUL-8-04   9PM;   PAGE 3

2

1
1

2

3

4    **APPEARANCES:**

5

6
DZIKOWSKI & WALSH, by
JOHN L. WALSH, ESQUIRE
on behalf of the Trustee

7

8

9
BERGER, SINGERMAN, by
PAUL A. AVRON, ESQUIRE
on behalf of the Ad Hoc Committee

10

11
OFFICE OF THE UNITED STATES TRUSTEE, by
HEIDI FEINMAN, ATTORNEY-AT-LAW
Attorney/Advisor
on behalf of the United States Trustee

12

13    -  -  -

14

15

16

17

18

19

20

21

22

23

24

25

OUELLETTE & MAULDIN COURT REPORTERS, INC.   (305)358-8875

3

| | |
|---|---|
| 1 | THE COURT:  Westwood. |
| 2 | MR. AVRON:  Good morning, Judge.  Paul Avron, |
| 3 | Berger, Singerman, special counsel for the trustee, |
| 4 | John Barbee. |
| 5 | THE COURT:  Good morning. |
| 6 | MS. FEINMAN:  Good morning, your Honor. |
| 7 | Heidi Feinman for the U.S. Trustee. |
| 8 | MR. WALSH:  John Walsh on behalf of Dzikowski & |
| 9 | Walsh. |
| 10 | MS. FEINMAN:  Your Honor, just as a preliminary |
| 11 | matter, that's why I got up to talk to Mr. Avron and |
| 12 | Mr. Walsh, I don't have with me a copy of the notice of |
| 13 | rehearing of the motion for interim distribution, and I |
| 14 | was a little concerned because at the last hearing, and at |
| 15 | every hearing, there have been homeowners here who have |
| 16 | wanted to know what was going on. |
| 17 | I don't see anybody here, I don't see the |
| 18 | Menzanos here, I would think that they may have an |
| 19 | interest, so I wanted -- I don't have a certificate of |
| 20 | service, I don't even have a notice of hearing, and I |
| 21 | wanted to -- if the Court has it in your records, whether |
| 22 | you can see whether they were served. |
| 23 | Mr. Walsh tells me he was not served with a |
| 24 | notice of hearing. |
| 25 | THE COURT:  There's a certificate of mailing |

4

1   attached -- or in the file, but it does not have any

2   attachment to it indicating it was sent to anyone.

3       MR. AVRON:  Judge, Ms. Feinman did come up to me

4   before the hearing and I candidly advised her I did not

5   know.  It was my understanding that -- I was not at the

6   last hearing, that Mr. Moorefield covered the hearing, and

7   that your Honor asked that the distribution motion be set

8   at the same time as Dzikowski & Walsh's rehearing motion.

9       THE COURT:  Right.

10      MR. AVRON:  I candidly, again, do not know if

11  Mr. Barbee sent that notice out.  I am not in possession

12  of it, and if your Honor wants to hear the matter today,

13  I'm prepared to go forward, if your Honor wants it to be

14  reset, I'll do whatever your Honor instructs.

15      THE COURT:  Well, the question is:  Is there

16  adequate notice?  Do I want to hear it?  Yeah, I want to

17  get this done, and I'm sure Mr. Walsh does, and so do you.

18      MS. FEINMAN:  Your Honor, this is separate from

19  the motion with respect to the disgorgement.  I mean, I do

20  have an objection to the motion for interim distribution,

21  you know, set aside from the notice of hearing, but

22  obviously it does not comply with local rules because the

23  local rules require the list of those people who are

24  served be attached to the court order.

25      I don't mean to put a cog in the wheel, but if

5

1    these people aren't getting notice, the Menzanos have a

2    right to be heard, and they have an issue with respect to

3    their appeal, which is my objection to the interim

4    distribution, anyway.

5          Your Honor, like I said, I don't want to put a

6    cog in the wheel, but I think notice has to be done in an

7    appropriate manner.

8          THE COURT:  I agree.

9          MR. AVRON:  I'll have Mr. Barbee and

10   Mr. Moorefield reset that matter, but, again, just for

11   clarification, this is independent of the motion for

12   rehearing.

13        MS. FEINMAN:  I apologize, but I think that's an

14   appropriate thing.

15        THE COURT:  None needed, and I forget why we

16   moved them together.  Was there a reason ---

17        MS. FEINMAN:  The notice.  It was notice, because

18   the Menzanos weren't served, Mr. Walsh wasn't served.

19   The parties ---

20        THE COURT:  On the motion for rehearing?

21        MR. AVRON:  No.

22        MS. FEINMAN:  The motion for interim

23   distribution, not the rehearing on the disgorgement issue.

24        MR. AVRON:  Right, that's separate issues, Judge.

25        MS. FEINMAN:  Those are two separate issues.

6

2

1              THE COURT:  So the motion for rehearing was

2      always set for today?

3              MR. AVRON:  That's correct, Judge.

4              THE COURT:  The motion for interim distribution

5      was not properly noticed last time, and it's not,

6      apparently, properly noticed this time.

7              MR. AVRON:  I will speak to Mr. Barbee today,

8      Judge, and I apologize.  I understood it was done.

9              THE COURT:  Let's deal with the motion for

10     reconsideration.

11             MS. FEINMAN:  Thank you, your Honor.

12             MR. WALSH:  Thank you, Judge.  John Walsh on

13     behalf of Dzikowski & Walsh.

14             Judge, at the last hearing your Honor ruled

15     based -- on the disgorgement motion, essentially, the

16     ruling was based upon the District Court's order that the

17     services provide a benefit.  That may be a direct quote.

18             THE COURT:  Probably.

19             MR. WALSH:  In any event, we have filed a

20     memorandum, which I think points out the divergence of the

21     prongs for consideration of compensation under 330.  We

22     had set forth the case law and, essentially, there's two

23     divergent prongs of analysis.  One is benefit to the

24     estate, and I think that the complete analysis there is

25     benefit to the estate at the time the services were

7

3

1    rendered, and the other prong is actual and necessary,

2    fees rendered in providing services which were actual and

3    necessary, again, at the time they were rendered.

4         In a Chapter 7 case such as this, and I would

5    argue that in light of the history of this case, services

6    were actual and necessary.  I mean, the services were

7    rendered at the time they were, such as -- the posture of

8    the case was such that certain actions were required of

9    the trustee.

10        The trustee has previously testified that he

11   directed counsel, me, to comply with the Court's orders to

12   do what the Court directed him to do.  Everything we've

13   done in the case was pursuant to order.  It was

14   scrutinized by order, was directed by order, was approved

15   by order.

16        As I say, the case was traveling along that same

17   posture for four and a half years.  It was not until, as

18   your Honor points out, the District Court reversed the

19   Bankruptcy Court's decisions that the posture changed.

20   That does not eliminate or modify the fact that services

21   were rendered all along that were required.

22        The Court directed certain actions to be taken.

23   I'm not in the habit of disregarding court orders and

24   picking and choosing which ones I'm going to follow.  The

25   Court directs it, I do it, or I take an appeal, but I

8

```
 3     1    don't just pick and choose.  If the Court directs it, in
       2    my mind that makes it necessary, I believe that's what the
       3    case law says.  Directives are meant to be followed.  The
       4    Court's orders are meant to be followed.
       5             The Court followed a course of administering the
       6    case, Mr. Barbee followed a course of administering the
       7    case, and as I say, the fees and expenses were charged and
       8    were necessary to accomplish those goals.
       9             As I say, either this Court or Judge Lessen, as
      10    visiting judge, made rulings all along, directed certain
      11    courses of action, directed the trustee to undertake
      12    certain things, and all those things were required --
      13    attorney's fees and services were required.
      14             The appeals in defense of this Court's order,
      15    again, are a necessary expense and necessary -- actual and
      16    necessary service to defending this Court's orders.
      17             Again, from the style of the case, they were
      18    styled, in terms of the appeal, where Mr. Barbee was the
      19    named appellee and responsible for defending the orders.
      20    That may or may not be an issue that needs to be revisited
      21    depending upon the way oral arguments turn out in the
      22    appellate case, which is set for the day after tomorrow in
      23    the Menzano matter, but regardless ---
      24             THE COURT:  What does that mean?
      25             MR. WALSH:  Well, the Menzanos have asked to
```

NT. BY: JUDICIAL RESEARCH & RETRIEVAL   ; 954 832 0993   ;   JUL-8-04   ?   )PM;        PAGE 10

9

3

1  intervene in the District Court case and they have been

2  denied.   Their appeal is set for argument the day after

3  tomorrow to potentially grant them an ability to come back

4  in.

5          THE COURT:   To intervene?

6          MR. WALSH:   Intervene, which may undo all of

7  those things, I do not know.   Candidly, I would probably

8  ask to intervene at this point, too, if that goes back to

9  the District Court, but that's neither here nor there.

10          In any event, because of the posture of the

11  appeal, Judge, Mr. Barbee was the named appellee,

12  although, the action was being brought to determine the

13  claimant's claims.   As such, the trustee was charged and

14  the trustee was the one from whom a brief was required,

15  requested and needed to be filed.

16          As I say, everything we've done in this case was

17  pursuant to court order, was subject to scrutiny from one,

18  two or three different sides, and the services were

19  rendered, and I believe rendered in a fashion that carried

20  out this Court's wishes.

21          As such, the actual and necessary prong, which I

22  think is the appropriate one to be applied in a Chapter 7

23  case such as this, where there are certain administrative

24  functions which are required, I think that's met.

25          As I pointed out, there have been three --

1   essentially three fee applications, two interims, in which

2   distribution was made, and the final one.

3       If you look at the fees, the two interim awards

4   that were remitted covered periods essentially prior to

5   even the appellate process starting.  The last one cut off

6   in March of 2001, that was about the time when the appeals

7   process started to get geared up.  So, essentially, the

8   last fee application, which is the one which was

9   outstanding, which sought the remaining compensation of

10  about $98,000, that fee application is the one that

11  covered the appellate period pretty much exclusively.  I

12  say that because there was some additional time included

13  in that fee application on the -- you'll recall, the

14  Menzanos brought a motion to remove Mr. Barbee as trustee,

15  and your Honor directed the trustee to proceed with

16  foreclosures and record liens and get those things closed

17  out.  That's the only other substantial issue that was

18  involved in that final fee application.

19      All those fees, up until November of 2002, as I

20  say, were incurred and undertaken at the direction of

21  Mr. Barbee, who was directed to do those things by this

22  Court.  As such, the actual and necessary prong I think is

23  satisfied.

24      The second aspect, which I think has more

25  application in a Chapter 11 case, but I think it does have

11

 1   some application here, at least needs to be considered, is

 2   the benefit to the estate.

 3        As I say, I think the benefit to the estate prong

 4   is actually -- when you look at the language of

 5   330(a)(C)(3), deals with actual and necessary, designed to

 6   provide a benefit at the time the services were rendered,

 7   and, again, at the time the services were rendered, we

 8   were traveling under judgments, orders, directives from

 9   the Bankruptcy Court, and we were not yet subject to any

10   reversals of what was supposed to be going on.

11        We were carrying out the case as we believe was

12   appropriate, as the Court has ruled was appropriate, and,

13   again, in terms of benefit to the estate, at the time the

14   services were rendered, we were carrying out the Court's

15   wishes, carrying out the Court's directives, and adhering

16   to the judgments, and, again, to administer the case and

17   to provide a benefit to the case, it's at the time the

18   services were rendered, and that's what we did.

19        THE COURT:  Thank you.

20        MR. WALSH:  If I may also ---

21        THE COURT:  Yes, sir.

22        MR. WALSH:  We, as I indicated, Judge, I think I

23   put it in the motion itself, we have deposited into a

24   separate interest bearing account, such as what interests

25   rates are today, it is a separate account, the full amount

12

of the funds which are at issue in terms of disgorgement.

THE COURT:  What's the point of that, until the appellate process occurs?

MR. WALSH:  Frankly, Judge, depending upon the ruling, it would be our intention to take an appeal and ask for a stay or at least an abatement of the order.  We have put up the funds, we have put up the monies.  We don't have an adequate remedy in the event those funds are turned over and subsequently disbursed, presuming ---

THE COURT:  It's for appellate purposes?

MR. WALSH:  Yes, yeah, and, again, I don't want the Court to think that I'm delaying things here to put things together.  The funds are deposited and we're ready to perform.

THE COURT:  That wasn't my impression at all.

MR. WALSH:  Okay.

THE COURT:  I didn't know if there was something else going on in the appellate process that you were doing.

MR. WALSH:  Not yet.  As I say, it may change on Wednesday, I don't know.

MR. AVRON:  Good morning, Judge.  Paul Avron. I'll try and be brief.  For the reasons set forth in our response to the reconsideration motion, we respectfully submit that it doesn't meet the well-recognized criteria

1   for motions to reconsider under Rule 59(e) based on the

2   case law from the Southern District that we cited in our

3   memorandum.

4           Alternatively, even if your Honor were to find

5   that it does meet one of those stated criteria, I

6   respectfully suggest that the argument of opposing counsel

7   is wrong because the language in 330(a)(3)(C) is necessary

8   or beneficial, and if your Honor has a choice, it's not

9   reversible error to choose one over the other.

10          I further submit to your Honor that even if

11  arguendo counsel is right as to his argument under

12  330(a)(C), it is respectfully irrelevant because at the

13  end of the day there is no estate property with which to

14  pay Dzikowski & Walsh for the services rendered.

15          This case started with $200 of personal property

16  in this estate, basically an approximated value of some

17  furniture at the clubhouse.  That's been the whole problem

18  with this case, and that's what I told your Honor when I

19  was at this podium at the last hearing, there's never any

20  money in this estate.

21          An "estate," in quotes, was created by the

22  special assessment, which was subsequently found to be

23  unlawful.  There's no basis in law for a professional of

24  the estate to be paid from non-estate funds.

25          So even if your Honor were to agree with

14

1  counsel's argument as to 330, it cannot ultimately carry

2  the day, and that, of course, was the primary finding of

3  the District Court on remand, that it was not appropriate

4  for Mr. Barbee to assess third-party non-debtor homeowners

5  and use that property, which did not constitute property

6  of the estate, to pay estate debts.  Nothing has changed.

7  That is the -- at the end of the day, that's the bottom

8  line in this case, it truly is.

9        I would ask that if your Honor, for appellate

10  purposes -- because I think if your Honor is going to deny

11  the motion to reconsider, there's going to be an appeal, I

12  think that's pretty obvious.  I would respectfully request

13  that if your Honor is going to deny the motion for

14  reconsideration, to protect the record, I would ask this

15  Court make a finding that the legal analysis, and

16  reasoning, and case law your Honor applied in ruling for

17  disgorgement in the September 5, 2003 order, apply equally

18  to Dzikowski & Walsh.

19        THE COURT:  If and when they file an appeal, then

20  they file a motion to stay, and I'll hear all those sorts

21  of arguments at that point.  I don't need to hear the

22  issue on the appeal.

23        MR. AVRON:  Okay.  Thank you, sir.

24        THE COURT:  Reply.

25        MR. WALSH:  Two points, Judge.  One, again, the

15

```
 5    1    language under 11 U.S.C. 330 (a)(3)(C) is two prongs,

      2    whether the services were necessary to the administration

      3    of a case under this title, and the second prong is

      4    beneficial at the time at which the services were rendered

      5    toward the completion of the case under this title, two

      6    divergent prongs.  Under either reading -- Mr. Avron cuts

      7    it off at beneficial, but beneficial is not the end of the

      8    analysis, it's beneficial at the time the services were

      9    rendered.

     10         The second response, Judge, the second point I'd

     11    like to make is, again, we're talking about -- and, again,

     12    the argument Mr. Avron is making in terms of what is

     13    property of the estate, the fact of the matter is at one

     14    point property of the estate constituted over a million

     15    dollars in assets.  The trustee administered those funds

     16    and they were distributed.

     17         There were no orders staying, modifying or

     18    adjusting those things.  In fact, those funds were

     19    administered by the trustee as property of this estate.

     20    For them to make the argument that the estate is only

     21    comprised of a $200 pool table is, again, back to the

     22    restitution argument.  Your Honor did not find merit with

     23    that, and essentially ruled based upon 330 at the prior

     24    hearing, that's the issue I've sought reconsideration of.

     25         The fact of the matter is, again, I'm sure your
```

16

1    Honor is familiar with the history, this case was

2    originally filed and Judge Ray was assigned.  It was

3    dismissed.  During the time between the period it was

4    dismissed initially, and then refiled and assigned to your

5    Honor, Mr. Klein had assigned the declaration of

6    restrictions and all the assessment powers to the

7    successor homeowners' association.  You'll recall that's

8    one of the first things we did, was put the association

9    back together.  We avoided that transfer because there was

10   no consideration of the debtor and, essentially, we got a

11   ruling that the successor homeowner association was the

12   alter ego of the debtor.

13        The debtor's schedules don't control.  Mr. Klein

14   clearly had his own agenda in terms of what he wanted to

15   accomplish here, what his intentions were with respect to

16   the bankruptcy filing.

17        The fact that Mr. Klein listed only a pool table

18   is not the point.  The fact of the matter is, Judge, this

19   Court made rulings, Mr. Barbee carried out those rulings

20   and whether the asset was created or what have you, the

21   contract right was property of the estate.

22        To the extent the District Court has changed or

23   modified that ruling and, again, I think the District

24   Court's actual ruling is important because I'm still at

25   odds with respect to the interpretation of that, the

NT.BY: JUDICIAL RESEARCH & RETRIEVA   V;954 832 0993      ;   JUL-8-04   2PM;      PAGE 18/21

17

1 District Court order found the punitive damages to be

2 improper and vacated those, and directed Mr. Barbee to

3 cease collecting the assessments.  It did nothing in terms

4 of retroactively impacting anything.  There were two

5 findings, and that was the Court's order.

6       The editorialization and the extensions which

7 have grown out of that District Court order, I think go

8 well beyond what the District -- the limited ruling the

9 District Court made.

10       THE COURT:  Didn't the District Court say cease

11 because Mr. Barbee has no authority to make the

12 assessments?

13       MR. WALSH:  Judge, my interpretation of the

14 District Court's order is that the punitive damages were

15 improper and the assessments should not have included the

16 punitive damages, that's what I think the District Court

17 was trying to get to.

18       THE COURT:  So you think the District Court order

19 allows the assessments for the non-punitive damages?

20       MR. WALSH:  I think that was the intent.

21       THE COURT:  Have you sought reconsideration of

22 the District Court order to clarify that?

23       MR. WALSH:  I don't have standing.  Until I have

24 an adverse ruling based upon that, I don't have standing,

25 Judge.  I had taken an appeal of that on behalf of the

18

6      1   estate, which is the appeal that Mr. Barbee settled as

2   part of the agreement by which the new counsel is now

3   pursuing all of the distributions, but, again, I

4   individually have not had standing.

5          THE COURT:   Okay.

6          MR. WALSH:   My appeal was dismissed.

7          THE COURT:   To me the District Court's ruling is

8   clear, whether I agree with it or not, and that is the

9   District Court ruled that this estate did not have the

10   legal authority to make the assessments for any of the

11   claims being asserted.  Therefore, I find the asked for

12   fees were not necessary to the administration of the case,

13   nor were they beneficial at the time the services were

14   rendered for the completion of the case and, therefore,

15   I'm going to grant the motion.

16          I will also say that the monies that were paid

17   were not, according to the District Court's order, which

18   is the order that now binds this Court, were not property

19   of the estate when they were paid and, therefore,

20   disgorgement, again, is appropriate.  I'm going to deny

21   the motion to reconsider.

22          You'll prepare the order?

23          MR. AVRON:   Yes, sir.

24          THE COURT:   Thank you.

25          MR. AVRON:   Should I just do a simple order

ENT BY: JUDICIAL RESEARCH & RETRIEVA   V;954 832 0993     ;   JUL-8-04   53PM;     PAGE 20/21

19

6   1   incorporating your Honor's findings?

    2          THE COURT:  I think you ought to go a little bit

    3   further than that.

    4          MR. AVRON:  All right.

    5          THE COURT:  Thank you.

    6          MR. WALSH:  Thank you, Judge.

    7          THE COURT:  You're welcome.

    8          (Thereupon, the above-proceedings were

    9   concluded.)

   10

   11

   12                    -      -      -

   13

   14

   15

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25

NT BY: JUDICIAL RESEARCH & RETRIEVAL ;954 832 0993 ; JUL-8-04 ; 3PM; PAGE 21/21

20

## CERTIFICATE

STATE OF FLORIDA)
                 : SS
COUNTY OF DADE)


            I, MARGARET FRANZEN, Shorthand Reporter

and Notary Public in and for the State of Florida at Large

do hereby certify that I was authorized to and did

report in shorthand the proceedings at the foregoing

hearing and that the pages, numbered from 1 through 19

inclusive, contain a full, true and complete

transcription of the said proceedings and report of same.


            WITNESS my hand this 15th day of June,

2004.


                    Margaret Franzen

                My Commission Expires:
                    April 14, 2006


OUELLETTE & MAULDIN COURT REPORTERS, INC.    (305)358-8875